REID, Judge.
This case arose out of a Cease and Desist Order No. 105 issued by the defendant, Clayton James, as Commissioner of Securities, and issued to plaintiff’s representative, which said Cease and Desist Order was based upon the finding of the Commissioner that the marketing procedure followed by the plaintiff constituted an “endless chain” and, as such, was prohibited by LSA-R.S. 51:361 et seq. In addition, the order stated that the referable sales contracts offered by the plaintiff were securities as defined by LSA-R.S. 51:701 of Louisiana Securities Law and as such securities had not been registered or authorized by the Commissioner of Securities, thus violating provisions of LSA-R.S. 51:701.
Subsequent to the Cease and Desist Order, plaintiff, Holiday Magic, Inc., filed this suit against Clayton James, Commissioner of Securities, and Jack P. F. Gremillion, Attorney General, State of Louisiana. Plaintiff in his suit sought the following relief as set forth in his prayer:
1.That the enforcement of the cease and desist order be stayed pending a decision in this matter;
2. For a declaratory judgment in favor of plaintiff and against the defendant, decreeing that the petitioner’s marketing procedure is not in violation of R.S. 51:361, and that petitioner’s distributor licensing agreements were not securities within the meaning of LSA-R.S. 51:701; and
3. In the alternative, that should the court find that its marketing procedures did violate R.S. 51:361, the Court should order the Commissioner of Securities to issue to petitioner a permit to operate an endless chain in accordance with R.S. 51:361.
The plaintiff’s petition, together with citation to appear, were served upon defendants on June 19, 1967. Attached was a rule to show cause, ordering only the defendant, Commissioner of Securities, A. Clayton James, to show cause on the 26th day of June why the Cease and Desist Order issued to plaintiff should not be vacated and set aside. Defendant, A. Clayton James, filed responsive pleadings to this order asserting that the order should be recalled for the reason that the plaintiff had not prayed for such relief in his petition, having merely prayed that the Cease and Desist Order be stayed pending a decision by the Court on the matter, for the further reason that this was an attempt to have this matter decided by show cause order which constituted an unauthorized use of summary proceedings and, therefore, the said show cause order should be recalled and set aside.
The matter was set for 10:00 A.M. on June 26, 1967, but, after argument on defendants’ response to the show cause order, was recessed until 3:00 P.M., at which time the plaintiff filed a supplemental and amended petition, amending the prayer of its original petition by further praying for:
1. A temporary restraining order, enjoining the defendants from enforcing' the Cease and Desist Order;
2. A preliminary injunction in the same form and .substance as the temporary *49 restraining order after a hearing on a rule to show cause; and
3. After citation and due proceedings had, for judgment in favor of plaintiff and against the defendants, decreeing that the activities of the petitioner did not violate Louisiana Law, and perpetuating the preliminary injunction making it permanent in the form.
The supplemental and amended petition was filed without objection being made by the defendants who, as the defendant states, could not object because no answer had been filed. Therefore, on the same day, by consent of counsel, the following stipulating was entered into:
“It was agreed and stipulated by counsel for plaintiff in rule and counsel for defendant in rule that the matter would be taken up on the merits. Evidence was introduced and the matter submitted on the plaintiff’s petition for declaratory judgment on briefs, to be filed, counsel for plaintiff in rule to have three days, counsel for defendant in rule to have three days additional, the matter then to be taken under advisement by the court.”
At the time the hearing was had, the defendants had not filed answer to either the plaintiff’s original petition or to plaintiff’s supplemental petition.
On July 10, an answer was filed in the record by the defendants and on the 24th day of July, for written reasons assigned, a declaratory judgment was rendered in favor of the plaintiff and against the defendants. The judgment, which was signed and filed on August 18, 1967, declared that Holiday Magic, Inc.’s merchandising plan did not constitute an endless chain under the provisions of LSA-R.S. 51:361, and enjoined the defendants from interfering in its activities as ordered through Cease and Desist Order No. CD-105, all costs of the proceedings be paid by the defendants.
From this Judgment, the defendants have appealed.
It should be pointed out that the only evidence presented at the trial of this case was testimony by one of plaintiff’s officials and introduction of certain papers, documents, and publications affecting or relating to its method of distributing its products to the general public.
The issue raised by the Cease and Desist Order concerning whether or not plaintiff’s referable sales contracts were securities under R.S. 51:701 and, were thus subject to regulation as such, was apparently abandoned by the defendants as no serious argument was made by the Commissioner of Securities on this point at the trial and no mention made of this argument in defendants’ brief.
The defendants in their brief raised two questions:
1. The question of whether or not the plaintiff’s marketing procedures are an endless chain in violation of R.S. 51:361; and
2. That the Trial Court erred in assessing court costs against the defendants in that L.R.S. 13:4521, as amended by Act 509 of 1964, exempts the state and its agency from the payment of court costs in state courts, with the exception of stenographer’s fees.
In regard to the first point raised by the defense in its appeal which is the central point at issue; that is, the question of whether or not the plaintiff’s marketing procedure constituted an “endless chain” in violation of R.S. 51:361, we wish to state the following:
“As used in this Sub-part:
“ ‘Endless chain’ means any plan or scheme wherein any person sells, transfers, assigns, or issues to any person any right, property, ticket, coupon, certificate, contract, or other token, and wherein the purchaser, transferee or assignee thereof or the person to whom the same is issued undertakes or is required or is permitted *50 to undertake for himself, or as the agent, representative, or attorney of such person to sell, transfer, assign, or issue to another any right, property, ticket, coupon, certificate, contract, or. other token which may under certain conditions entitle the purchaser or recipient thereof to any right, property, ticket, coupon, certificate, contract, or other token and wherein the purchasers, transferees or assignees thereof from the original purchasers, assignees, or transferees, or from subsequent purchasers, assignees, or transferees, are also given as a consideration for their entry into or participation in such plan or scheme and their purchase or receipt of such right, property, ticket, coupon, certificate, contract or other token, the right, privilege or obligation of making further sales, assignments, or transfers of any right, property, ticket, coupon, certificate, contract or other token.
“ ‘Dealer’ means each person carrying on and conducting any system of merchandising by means of an endless chain as a principal.
“ ‘Agent’ means every person engaged in the sale, transfer, issuing or assignment of any right, property, ticket, coupon, certificate, contract, or other token in connection with any system of merchandising by means of an endless chain otherwise than as a principal.
“ ‘Commission’ means the Louisiana Securities Commission.”
As stated by the Trial Judge, this statute, while adopted by the Legislature in 1926, has not been examined by the courts of this state. The only witness offered by either side was a Harold Lipska, a Financial Vice President of Holiday Magic, Inc. He outlined to the court the procedure used in their marketing procedure which said procedure was set forth in the Trial Judge’s opinion, as follows:
“ * * * The marketing procedure outlined reflects that there are four levels of participation in their sales organization. These levels and the requirements for participation are described as follows, commencing at the highest level and descending to' the lowest level:
“1. A General Distributor attains his position by first being a Master Distributor and by securing another person who qualifies as his replacement as such. Further, he must put up the sum of $2,500.00 for the purchase of an inventory of cosmetics from Holiday Magic. This entitles him to a special training course paid for by Holiday Magic and to a 65% profit on the sale of products made to those in the organization below him. There is no obligation on his part to recruit any one into the organization other than his replacement.
“2. A Master Distributor becomes one by either investing $2,250.00 in an inventory of cosmetics valued for retail purposes at $5,000.00; or, if they are either a Holiday Girl or Organizer, by purchasing in one calendar month an aggregate of $5,000.00 in retail products. The Master is thus entitled to an override on the sales of people in the organization below him.
“3. An Organizer as the term implies has the job of recruiting additional Holiday Girls. He secures this position simply by purchasing a cosmetic distributor’s kit and a one pack kit for $139.50. He supplies products to the Holiday Girls and receives a 30% override commission on their sales.
“4. Finally there is the Holiday Girl who invests $29.00 and receives a cosmetic distributor’s kit to use in giving demonstrations and taking orders. She receives a commission on her sales; however, she is not entitled to recruit anyone or share in the profits on any one’s sales of the products.”
Mr. Lipska further testified that the Holiday Girls and Organizers signed contracts which specified that they were inde *51 pendent contractor retailers and that no one paid for the right to sell petitioner’s products, although it was required that a certain amount of merchandise be purchased. at the various levels, and he further stated that the company dealt only with the General and Master Distributors.
Defendant argues that an Organizer in the Holiday Magic plan, by the use of industrious effort and use of arithmetic progression, could obtain retail sales outlets numbering in the millions, thus constituting an endless chain. As the Trial Judge pointed out, however, the defendant’s reasoning is incorrect in that the distributor on the lowest level, the Holiday Girl, is not a recruiter and she could not increase the members by herself, but only by the recruiting efforts of the Organizer on the level above. In addition, there are no levels below the Holiday Girls and, accordingly, she does not share in the profits from other sales.
The Court then went on to hold that as the evidence indicates, the Holiday Girl’s essential role does not permit recruiting and they do not share in the sales of lower levels of activity, that all additional recruiting must be done by the Organizer, and therefore the marketing plan of Holiday Girls is not an endless chain.
It is our opinion that this holding of the Trial Court is correct and that in order to hold the Holiday Girls an endless chain, it would be necessary to show that at every level of the procedure there could be additional recruiting.
With regard to the argument of plaintiff regarding Court costs, it is clear that LSA — R.S. 13:4521 prohibits the casting of the State for court costs, except for stenographers’ fees.
For the above and foregoing reasons, the judgment of the Trial Court is reversed insofar as it casts the defendant for court costs, but in all other aspects it is affirmed.
Reversed in part and affirmed in part.